UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

     v.

ROSALINDA PEREZ,
     also known as "Rosie;" and
MANUELA CHAVEZ,
     also known as "Lita"

No. 16 CR 337

Judge Ronald A. Guzman

## GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE*

The UNITED STATES OF AMERICA, through JOHN R. LAUSCH JR., United States Attorney for the Northern District of Illinois, respectfully submits the following consolidated motions *in limine*.

## I.   BACKGROUND

On April 9, 2019, a grand jury returned a three-count third superseding indictment alleging that between 2012 and September 2015, defendants Rosalinda Perez and Manuela Chavez conspired with Willie Slater, Individual A, and others to knowingly and intentionally possess with intent to distribute and distribute heroin and cocaine, in violation of Title 21, United States Code, Section 846 (Count One). Further, the indictment charged Perez with distributing 100 grams or more of heroin on August 16, 2015, in violation of Title 21, United States Code, Section 841 (Count Two), and both Perez and Chavez with distributing heroin on August 28, 2015, in violation of Title 21, United States Code, Section 841 (Count Three). The conspiracy and distribution counts allege mandatory minimum quantities of heroin as to Perez.

The government expects that, at trial, the evidence will show that between 2012 and September 2015, the defendants distributed large quantities of heroin and cocaine to Slater and others on the south side of Chicago. The defendants were co-owners of Roma III LLC, known as "The Basement," a clothing store at 4723 S. Ashland Avenue in Chicago where they sold sock, t-shirts, and other goods. They also distributed narcotics. Slater will testify that during the conspiracy period, Perez supplied him with an average of roughly one kilogram of heroin and one kilogram of cocaine per month. Chavez and at least one other Roma III employee, Individual A, assisted Perez in distributing narcotics and receiving narcotics payments at Roma III.

Specifically, on August 16, 2015, Perez fronted to Slater what was supposed to be two half kilograms of heroin, which Slater turned over to law enforcement the following day. During the course of his cooperation with the FBI, in August and September 2015, Slater made four controlled payments of money to Perez, Chavez, and Individual A to pay back what he owed for that kilogram. The conspirators also fronted Slater an additional kilogram on August 28, 2015.

## II. DEFENDANT SHOULD BE PRECLUDED FROM CROSS-EXAMINING THE COOPERATING WITNESS ABOUT CERTAIN PRIOR CONVICTIONS AND ARRESTS.

The government has disclosed to defendants the criminal history and underlying arrest records of Willie Slater, who the government may call at trial. The government moves under Federal Rules of Evidence 608(b), 609, and 403, to bar the defendants from cross-examining Slater about aspects of his criminal history, which includes five convictions and additional arrests.

### A.      Criminal History and Prior Bad Acts

Willie Slater has the following prior convictions: (1) a September 27, 2012, conviction for possession of a controlled substance for which he was sentenced to 30 months' probation; (2) a March 9, 2007, conviction for manufacturing or delivering a controlled substance for which he was sentenced to 30 months' probation; (3) a July 23, 2004, conviction for possession of cannabis for which he was sentenced to 2 years' probation; (4) a February 19, 1997, conviction for possession of a shotgun for which he was sentenced to 3 years' imprisonment; and (5) a November 18, 1996, conviction for manufacturing or delivering cannabis for which he was sentenced to 12 months' probation.

Slater has the following additional arrests:[1] (1)  an October 2011 arrest for possession of cannabis; (2) a December 2003 arrest for possession of cannabis; (3) a February 1999 arrest for possession of cannabis; (4) a January 1999 arrest for criminal trespass to vehicles; (5) an October 1998 arrest for manufacture/delivery of cannabis; (6) a September 1998 arrest for drinking alcohol on the public way; (7) a February 1998 arrest for driving without a license; (8) an October 1996 arrest for criminal trespass to vehicles; and (9) a January 1995 arrest for mob action.

Further, the government has disclosed the evidence gathered during its investigation of Slater, which includes uncorroborated statements about Slater's prior bad acts. Specifically, in late 2013, an associate of Slater's was murdered. One

---

[1] For many of these arrests, it is unclear whether Slater was ever formally charged, but—absent a conviction—whether he was charged is immaterial under Rules 608 and 609. Nevertheless, for present purposes, the government assumes Slater was charged in each instance.

confidential source of information told the FBI s/he believed Slater was responsible for the murder. Another confidential source of information named a second individual.

### B. The Court Should Preclude Cross-Examination Regarding Convictions that Do Not Bear on Truthfulness.

The Court should preclude cross-examination regarding convictions of Slater that are not probative of truthfulness. As a general matter, under Federal Rule of Evidence 608(b), a defendant is permitted to inquire into specific bad acts of a witness only if such acts are "probative of truthfulness or untruthfulness," *United States v. Manske*, 186 F.3d 770, 774 (7th Cir. 1999), and if the probative value of the evidence outweighs any unfairly prejudicial effect. *United States v. Saunders*, 166 F.3d 907, 920 (7th Cir. 1999). Similarly, Rule 609(a) permits the introduction of a witness's criminal convictions unless the probative value of the evidence is substantially outweighed by its prejudicial effect. Fed. R. Evid. 609(a), 403. The purpose of these Rules "is to allow a party to attempt to cast doubt on a witness's reliability for telling the truth." *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir. 1990) (en banc).

Beginning first with Slater's prior convictions, the government does not seek to bar admission of Slater's 2012 conviction, which occurred within the past 10 years and is thus presumptively admissible under Rule 609(a)(1)(A). The government does request that the defendants be barred from impeaching Slater with his other convictions, which occurred more than 10 years ago and are therefore subject to the limitations of Rule 609(b). Pursuant to this rule, "impeachment by a conviction falling

outside the rule's ten-year time limit should be permitted only in rare and exceptional circumstances." *United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008); *see United States v. Fallon*, 348 F.3d 248, 254 (7th Cir. 2003) (quoting *United States v. Shapiro*, 565 F.2d 479, 481 (7th Cir. 1977)). This question is not a close call when it comes to the convictions for narcotics offenses or for possession of a shotgun. These crimes say nothing about Slater's present-day credibility, let alone something that substantially outweighs the prejudicial effect. *See United States v. Miller*, 782 F.3d 793, 801 (7th Cir. 2015) (affirming district court's decision to bar questions about cooperating witness's 40-year-old conviction for heroin possession). Regarding the older narcotics offenses, the government does not seek to hide the fact that Slater has a history of narcotics trafficking – he will testify along these lines. However, questions about the convictions or the facts underlying them would be an unnecessary deviation from the issues at hand in this case.

### C. The Court Should Preclude Cross-Examination Regarding Arrests or Conduct Not Resulting in Conviction.

By its express terms, Rule 609 permits evidence only of convictions, not arrests.[2] Any marginal relevance of such arrests is substantially outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the jury. If the jury is presented with references to or evidence of the Slater's additional arrests, the jury

---

[2] More specifically, Rule 609 allows for the admission of a witness's felony conviction for purposes of impeachment under certain specified circumstances. Under the Rule, "[f]or the purpose of attacking the credibility of a witness, evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted. . . ." Fed. R. Evid. 609.

may improperly conclude that it need not give the same weight to his testimony as it would to those who do not have these prior arrests, or that Slater was convicted of/guilty of the crimes for which he was arrested. Any of these conclusions would be improper and would cause undue prejudice to the government's case.

Nor are arrests or ramifications short of conviction admissible under Fed. R. Evid. 608(b). Rule 608(b) provides that specific instances of past conduct may be inquired into on cross-examination if and only if they concern the witness's character for truthfulness. Courts have construed Rule 608(b) to restrict cross-examination on prior arrests absent special facts bearing on the witness's character for the specific trait of truthfulness. *See Cruz v. Safford*, 579 F.3d 840, 844-45 (7th Cir. 2009) (upholding exclusion of prior arrests because they had no bearing on truthfulness); *United States v. Mitchell*, 502 F.3d 931, 967 (9th Cir. 2007) (upholding exclusion of prior theft, not resulting in a conviction, because it has no bearing on truthfulness); *United States v. McCarroll*, No. 95 CR 48, 1996 WL 99442, at *12 (N.D. Ill. Mar. 4, 1996) (excluding arrests for battery and theft and stating that, "[i]n general, arrests and charges which did not lead to a conviction cannot be used for impeachment.").

The defendants should be barred from asking questions about Slater's prior arrests. None of these arrests could reasonably be argued to be relevant in any way to the question of Slater's truthfulness. The fact that Slater was arrested for possessing cannabis, criminal trespass to vehicles, and mob action sheds no light on whether Slater will tell the truth in this case. *United States v. Neely*, 980 F.2d 1074,

1080 (7th Cir.1992) ("[T]he purpose of admitting prior arrests or convictions is not to show that the witness is a bad person or a 'non-saint,' but to impeach his credibility.")

The same goes for rumors and speculation about Slater's involvement in a murder that has nothing to do with the crime charged here. Courts have excluded cross-examination into prior alleged bad acts of witnesses, including even allegations of violence. *See, e.g., United States v. Holt*, 486 F.3d 997, 1001-02 (7th Cir. 2007) (defendant correctly prohibited from cross-examining an officer based on his thirty-day suspension from police force for conduct not relevant to issue of truthfulness); *United States v. Miles*, 207 F.3d 988, 994 (7th Cir. 2000) (court "correctly refused" to let defendant cross-examine a witness regarding his oversight in failure to register a gun because it did not "implicate fraud, deceit, or dishonesty."); *United States v. Henderson*, No. 11 CR 74, 2012 WL 698796, at *2 (N.D. Ill. Mar. 1, 2012); *United States v. Tate*, 633 F.3d 624 (8th Cir. 2011) (disallowing allegation of assault as "not probative of [the witness]'s character for truthfulness"). Even if Slater had been *arrested* for murder (he was not), the fact of the arrest would be inadmissible because it has no bearing on his truthfulness. As it stands, the record contains only unsubstantiated, uncorroborated allegations of Slater's involvement.[3] The probative value is extremely limited, and the prejudice to Slater would be great.

---

[3] In Slater's interview with the FBI on October 9, 2015, Slater denied involvement in any narcotics or gang-related shootings.

### III.  THE COURT SHOULD EXCLUDE ARGUMENT, EVIDENCE, OR INQUIRY THAT MAY ENCOURAGE JURY NULLIFICATION.

The government moves to preclude the defendants from arguing at trial that the jury should disregard the Court's instructions on the law or presenting evidence or pursuing lines of inquiry designed to invite jury nullification. The law is plain that it is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the government has met its burden of proof. *See, e.g., United States v. Laguna*, 693 F.3d 727, 730-31 (7th Cir. 2012) (district court properly excluded evidence because, among other reasons, it had the potential to invite nullification); *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification is 'not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'").

The government cannot anticipate each form of potential jury nullification argument or evidence. The government moves to exclude the potential areas noted below, all of which are irrelevant to the elements of the crime charged, as well as any argument or questioning, no matter what its form, that, in effect, "would encourage a jury to acquit under any circumstances regardless of the applicable law or proven facts." *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983) (citation omitted).

### A.  Arguments and Evidence Regarding Penalties Faced by Defendant Should Be Precluded.

The defendants face a statutory maximum of life in prison and a $10 million fine on each count. Perez faces a mandatory minimum sentence of 10 years. The Seventh Circuit has made clear that "arguing punishment to a jury is taboo." *See, e.g., United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997), *overturned on*

*other grounds*, 526 U.S. 813 (1999); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997). Argument and evidence concerning punishment are improper because the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g., Shannon v. United States*, 512 U.S. 573, 579, 578 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'"); *Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000) (same).[4] Mention of the potential penalties faced by the defendants – including possible imprisonment or fines – would serve only the improper purpose of inviting the jury to consider the penal consequences of a conviction and, ultimately, nullification.

### B. Argument or Questioning about the Motivation for Investigating or Prosecuting this Case Should Be Precluded.

The defendants are two of many individuals who were charged with drug trafficking activities in related cases. There are other individuals involved, including Individual A who worked at the Basement, who were not charged. The defendants may thus try to present evidence, argument, or comment about individuals who were not charged, or why the defendants were charged when others were not. The defendants should be precluded from doing so.

Evidence bearing on the government's decision to prosecute is "extraneous and collateral." *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"). More specifically, evidence concerning whether and why certain

---

[4] Pattern Jury Instruction 4.08 (2012) is consistent with this case law.

individuals were charged or not charged is irrelevant to the question of defendant's guilt. *See United States v. Young*, 20 F.3d 758, 765 (7th Cir. 1994) (where defendant claimed he did not knowingly participate in drug transaction, "[w]hether or not [co-arrestee] was criminally charged does not make the facts relating to [defendant's] knowledge and participation in the attempted purchase more or less probable") (citing Fed. R. Evid. 401).

Similarly, inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. *See, e.g., United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such evidence was irrelevant").

For all of these reasons, the Court should preclude evidence or argument concerning the government's charging decisions and motivations for investigating.

## C. Argument or Claims of Outrageous Government Conduct Should Be Precluded.

The Seventh Circuit repeatedly has held that "[o]utrageous government conduct is not a defense in this circuit." *United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011) (citation omitted); *see also United States v. Sherman*, 268 F.3d 539, 549-550 (7th Cir. 2001); *United States v. Boyd*, 55 F.3d 239, 241-42 (7th Cir. 1995) ("outrageous governmental misconduct" is no defense to a criminal charge, and the jury thus should not be exposed to irrelevant allegations of this sort). Furthermore, this Circuit held that the issue of government misconduct was a matter

of law for determination by the court: "the issue of outrageous government conduct is not a jury question." *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting that every circuit which has considered the issue has held that the issue is not a jury question) (citations omitted).

Yet, there is a "tendency in criminal cases to try some person other than the defendant and some issues other than his guilt." *United States v. Griffin*, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (citation omitted). The "thrust of the defense" in these types of cases "is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id.* at 1347. For example, Perez argued in her motion to suppress that the government "abducted" her from her car on April 20, 2016, and that law enforcement "intimidated and threatened" Perez into giving a statement. *See* R. 65 at 2. In the face of this tendency to interject themes of "government misconduct" into a defense strategy, courts routinely have granted motions *in limine* "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *United States Shields*, 1991 WL 236492, at *3 (N.D. Ill. 1991); *see also United States v. Finley*, 708 F. Supp. 906, 913-14 (N.D. Ill. 1989) (granting motion in *limine* to preclude evidence "which is not relevant to defendants' guilt but is designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation").

Accordingly, the government moves to bar the defendants from introducing evidence or argument of outrageous government conduct. The defendants should be precluded from attempting to defend this case at trial by attacking the propriety of the government's conduct.

## IV. THE COURT SHOULD PRECLUDE ARGUMENT OR EVIDENCE OF THE DEFENDANTS' LAWFULNESS.

The government moves to preclude the defendants from presenting evidence of, or making reference to, their lawfulness, non-corrupt conduct, and prior good acts, except reputation or opinion evidence offered by character witnesses strictly in accord with Rule 405(a).[5]

In an effort to distract the jury from the charges at issue, the defendants may seek to admit evidence and testimony that, on prior occasions, they acted in a lawful manner. The government cannot foresee all the ways the defendants might inject this issue into the trial. For example, in her motion to suppress and at the suppression hearing, Perez repeatedly referenced her status as a grandmother and her concerns about her family. *See* R. 65. She may attempt to argue that because she performed good acts during her life lives or owned a business to support her family, she could not have committed the charged offenses.

---

[5] Even evidence offered under Rule 405(a) cannot include specific instances of good conduct: it is limited to a description of the subject's reputation or to a brief statement of opinion, without support from specific instances of conduct. *See* Advisory Committee Notes to Rule 405 (The rule "contemplates that testimony of specific instances is not generally permissible on direct examination of an ordinary opinion witness to character . . . [O]pinion testimony on direct in these situations ought in general to correspond to reputation testimony as now given, i.e. be confined to the nature and extent of observation and acquaintance upon which the opinion is based.").

"Evidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment." *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012); *United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990) ("Proof that a defendant acted lawfully on other occasions is not necessarily proof that he acted lawfully on the occasion alleged in the indictment."); *United States v. Scarpa,* 897 F.2d 63, 70 (2d Cir. 1990) (upholding exclusion of evidence that defendants met regularly and did not discuss criminal activity; "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."); *United States v. Johnson*, No. 08 CR 466, 2011 WL 809194, at *4 (N.D. Ill. Mar. 2, 2011) (concluding that "evidence of specific lawful acts of Defendants is not properly introduced to show that Defendants did not have the requisite intent to commit the crimes charged"). Evidence that the defendants committed specific instances of good conduct is not proof that they did not participate in the narcotics trafficking charged in the indictment.

Thus, any evidence or argument regarding the defendants' alleged good acts or non-corrupt conduct is irrelevant and should be excluded.

## V.   THE COURT SHOULD PROHIBIT DISCOVERY REQUESTS OR COMMENTARY IN THE PRESENCE OF THE JURY.

Commentary regarding discovery, including discovery disputes and requests, should not be made in the presence of the jury. Requests for, and motions related to, discovery made in front of the jury are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage. In fact, as often happens, counsel's requests are ill-founded because the discovery

already has been tendered or is not subject to disclosure. In any event, these requests should be made to the Court or opposing counsel outside the presence of the jury with no prejudice resulting to either side. Accordingly, the government moves the Court to order that requests for discovery or comments relating to discovery be made outside the presence of the jury. *See, e.g., United States v. Gray,* No. 07 CR 166, 2010 WL 1258169, at *3 (N.D. Ind. Mar. 26, 2010) (granting government's motion to preclude the defense from requesting or commenting on discovery in the presence of the jury).

## VI. THE COURT SHOULD PRECLUDE COMMENTARY REGARDING THE COURT'S EVIDENTIARY RULINGS.

If the Court excludes evidence offered by either side, counsel should be barred from referring to this excluded evidence or otherwise commenting on the Court's evidentiary ruling in front of the jury. There is no legitimate reason for counsel to do so. Moreover, it is improper for counsel to comment on excluded evidence or suggest that excluded evidence would have affected the jury's analysis had only the Court admitted it. *See Solles v. Israel*, 868 F.2d 242, 245 (7th Cir. 1989) (criticizing prosecutor's "improper remarks in front of the jury including commenting on excluded evidence" as part of a litany of errors and improprieties). Motions *in limine* are counsel's opportunity to argue regarding the relevancy or propriety of evidence; once the court has ruled, the matter is concluded and counsel are not free to decide for themselves that the evidence is actually admissible.

VII. **DEFENDANT SHOULD BE PRECLUDED FROM MAKING ANY ARGUMENT REGARDING WITNESSES NOT CALLED BY EITHER PARTY.**

The government moves to bar the defendants from making arguments at trial based on missing witnesses. "[W]hen the witness is equally available to both sides, the preferred practice is to preclude the [missing witness] argument rather than to leave the jury free to speculate about a lot of non-evidence." *United States v. Simpson*, 974 F.2d 845, 848 (7th Cir. 1992).

Here, the government does not plan to call every witness to the narcotics conspiracy and possession charged in the indictment. All other potential witnesses, including those who worked at the Basement and were never charged, are equally available to both sides. The defendants have the ability to subpoena witnesses. Therefore, the government requests that the Court prohibit the defendants from introducing evidence about, or arguing that any relevant inference can be drawn from, the fact that additional witnesses did not testify at trial.[6]

---

[6] Alternatively, if the Court allows defendant to introduce evidence or make any such argument regarding missing witnesses, the government seeks permission to respond to this argument appropriately. Ordinarily, a prosecutor may reply to "an argument by the defense that the absence of some witness counts against the prosecution" by pointing out that the defense has the same subpoena power as the government. *Sblendorio*, 830 F.2d at 1392; *see also United States v. Aldaco*, 201 F.3d 979, 988 (7th Cir. 2000) ("[I]t was not improper for the prosecutor to make clear to the jury that the defendant, like the government, has the power to subpoena any witness or witnesses relevant to the case after [the defendant's] counsel had opened the door to this reply argument by the prosecution.").

## VIII. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant the government's motions *in limine*.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:    */s/ Christine M. O'Neill*
CHRISTINE M. O'NEILL
SEAN J.B. FRANZBLAU
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300

Dated:  April 18, 2019